

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- against -

MIGUEL GARCIA,
  also known as
  "Yabel Andres Concepcion Vargas"

MEMORANDUM AND ORDER

08 CR 32 (ARR)

---

ROSS, United States District Judge:

Defendant, Miguel Garcia ("defendant" or "Garcia"), a citizen of the Dominican Republic, is charged with the crime of illegally reentering the United States following deportation, in violation of 8 U.S.C. § 1326(a). Defendant moves to dismiss the indictment by collaterally attacking the validity of his 1999 deportation order, pursuant to 8 U.S.C. §1326(d). According to defendant, his deportation proceeding violated his Fifth Amendment due process rights because neither the immigration judge who presided over the proceeding ("IJ") nor his attorney told him of his right under 8 U.S.C. § 1229c to depart the United States voluntarily at his own expense in lieu of being deported.

In substance, § 1229c permits an eligible alien, who agrees to forfeit certain other rights accorded aliens in deportation proceedings, to avoid the consequences of deportation by departing the United States voluntarily. While an alien who elects voluntary departure waives any right to remain in the United States beyond a stated time period, the alien may, if eligible, be permitted to gain readmission to the United States by applying for a change in status from outside of the country. More significantly for the defendant here, if an alien who

1

departs the United States voluntarily reenters the country without permission, he will not become subject to the severe criminal penalties imposed for a violation of § 1326, as deportation is an element of the criminal offense.

This case raises the question of whether deprivation of an alien's voluntary departure rights under § 1229c, at least under the circumstances present here, constitutes a fundamental error in the deportation proceeding entitling the alien to collaterally attack his deportation order in a subsequent illegal reentry prosecution under § 1326. Existing Second Circuit precedent regarding collateral attacks upon deportation orders in § 1326 prosecutions arises in the context of the deprivation of an alien's right to seek a discretionary waiver of removal under former § 212(c) of the Immigration and Nationality Act (hereafter "INA") (also formerly at 8 U.S.C. §1182(c) (repealed 1996)). No circuit case addresses a collateral attack based upon the deprivation of voluntary departure rights conferred by § 1229c.

As set forth below, I conclude that for purposes of a collateral attack on a deportation order pursuant to § 1326(d), there is no meaningful distinction between the significance of access to a discretionary waiver of removal under former § 212(c) and access to discretionary voluntary departure under § 1229c. Concluding further that the deprivation of Garcia's voluntary departure rights was fundamentally unfair, and that he has met his burden of establishing the other requirements necessary to mount a successful collateral attack upon his deportation under § 1326(d), I grant the defendant's motion to dismiss the indictment.

2

## STATEMENT OF FACTS

On August 11, 1998, defendant pleaded guilty in New York State Supreme Court, New York County, to one count of Criminal Possession of a Weapon in the Third Degree, in violation of N.Y. Penal Law § 265.02(4) (repealed 2006).[1] Compl. at 2 (Dkt. No. 1). He was sentenced to one year in prison. On October 1, 1998, defendant received notice that immigration authorities had initiated removal proceedings against him pursuant to 8 U.S.C. §1227(a)(2)(c), providing that an alien convicted of unlawful gun possession is removable.[2] See Not. to Appear dated 09/17/98, submitted as Ex. B to Govt.'s Rep. To Deft.'s Mot. (Dkt. No. 22-2). It is undisputed that defendants's gun conviction rendered him removable and that defendant, despite his conviction, was eligible for voluntary departure under § 1229c. Tr. of Hearing dated July 2, 2008 at 16:15-20 (Dkt. No. 24) (hereafter "Tr. July 2").

Defendant's removal hearing, called a "master calendar hearing," took place in Oakdale, Louisiana on June 22, 1999. See Mot. for Teleph. Conf. at 1, submitted as Ex. C to Govt.'s Rep. To Deft.'s Mot. (Dkt. No. 22-3). As the defendant did not speak English, the IJ conducted the hearing in Spanish. Tr. of Immigration Hearing dated 6/22/99 at 1, submitted as Ex. G to Govt.'s Rep. To Deft.'s Mot. (Dkt. No. 22-7) (hereafter "Tr. June 1999"). Defendant's family hired a New York-based attorney, Teodulo Henriquez, Esq., to represent defendant in the proceeding. Henriquez participated in the hearing via telephone. Def.'s

---

[1] The provision is now included in Criminal Possession of a Weapon in the Second Degree. See N.Y. Penal Law § 265.03.

[2] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") changed the name of deportation proceedings to removal proceedings. 6 Charles Gordon et al., Immigration Law and Procedure, § 71.01[1] (Matthew Bender, Rev. Ed.). The terms removal and deportation will be used interchangeably in this opinion.

Aff. In Supp. Of Mot. To Dismiss at 1 (Dkt. No. 25) (hereafter "Def.'s Aff."). At the hearing's outset, the IJ asked Henriquez if he waived the formal reading of the rights on behalf of his client; Henriquez replied that he did. Tr. June 1999 at 1.

Henriquez pursued two forms of relief at the hearing, both of which required an adjournment. As his primary argument, Henriquez sought an adjournment to apply for an adjustment of status based on the United States citizenship of defendant's stepmother. Tr. June 1999 at 4. When granted, this relief allows a removable alien to receive lawful permanent resident status so that he may remain in the country. See 8 U.S.C. § 1255. The IJ denied an adjournment to pursue an adjustment of status because the defendant could not satisfy the statutory requirement that a visa allowing him to remain in the country be "immediately available." Tr. June 1999 at 5; see also 8 U.S.C. § 1255(a)(3). Henriquez also asked the IJ to adjourn the deportation proceeding to permit him to apply to the New York State Supreme Court for a Certificate of Relief from Disabilities, Tr. June 1999 at 3, which purports to allow a defendant to avert certain civil consequences of his criminal conviction. See N.Y. Correct. Law § 701 (2008).[3] Henriquez planned to argue that the certificate would prevent immigration authorities from using defendant's conviction as a basis for deportation. Tr. dated July 14, 2008 at 52:1-7 (Dkt. No. 28) (hereafter "Tr. July 14"). The IJ denied the requested adjournment, expressing doubt that, under IIRIRA, such a certificate would affect defendant's deportability. Tr. June 1999 at 4.

As the hearing progressed, the IJ twice asked Henriquez whether he sought relief from removability on any ground other than the two counsel had advanced. Henriquez

---

[3] Unless otherwise noted, all statutes are quoted and cited as they existed in 1999, at the time of defendant's deportation proceeding.

replied that he did not. Tr. June 1999 at 4. Prior to the hearing's close and after the IJ had

denied both of counsel's applications, the IJ inquired of Henriquez for a third time, "Do you

seek any other relief?" Id. at 5:32. Counsel replied: "[N]o, Your Honor." Id. at 5:34. At no

time during the hearing did the IJ or defendant's attorney mention that defendant was eligible

for voluntary departure. See Tr. June 1999.

At the end of the hearing, the IJ ordered defendant removed to the Dominican

Republic. Tr. June 1999 at 5. Henriquez preserved defendant's right to appeal. Id. at 5:45-

48. Six days later, however, by motion and affidavit dated June 28, 1999 and received June

30, 1999, Henriquez related that defendant's family had informed him that defendant wished

to waive his right to appeal, so as to avoid further incarceration during the pendency of his

appeal. Aff. In Supp. of Mot. to Waive Appeal at ¶¶ 2-3, submitted as Ex. E to Govt.'s Rep.

to Deft.'s Mot. (Dkt. No. 22-5). Defendant was removed from the United States on

September 1, 1999. Compl. at 2-3.

Defendant attempted to re-enter the country without permission on December 18,

2007, at JFK International Airport on a flight from the Dominican Republic. Compl. at ¶¶ 1,

3-4. When a records check showed a prior deportation, defendant was arrested for violation

of § 1326(a). Id.

On July 14, 2008, an evidentiary hearing was conducted to develop a factual record

on the issues raised by defendant's motion to dismiss. Two witnesses testified, the defendant

and Henriquez. In all respects material to this motion, both witnesses testified credibly.

Defense counsel also submitted the affidavits of his client, his client's father, Miguel Garcia

Sr., and attorney Henriquez.

As to his communications with his former attorney, defendant testified that he had never spoken with Henriquez at all, either before or after the deportation hearing, and had merely heard his attorney's voice on the telephone during the course of the hearing. Nor had Henriquez ever explained to defendant his right to apply for voluntary departure. Tr. July 14 at 20:23-25, 40:15-23, 42:21-23. Defendant's testimony in this regard was consistent with that of his father, who, by affidavit, attested that although he had conversed with Henriquez on several occasions during the course of Henriquez's representation of his son, the lawyer at no time advised him of his son's voluntary departure rights. Aff. of Miguel Garcia (Father) in Supp. of Mot. to Dismiss at ¶ 1 (Dkt. No. 27) (hereafter "Father's Aff."). Both the defendant and his father confirmed that at the time of the 1999 hearing, defendant had the financial means to depart the country voluntarily, as the father would have purchased a ticket for his son's flight to the Dominican Republic. Id.; Tr. July 14 at 40:24-25, 41:1-10. Defendant also testified that had he known of his right to voluntarily depart the United States, he would have availed himself of that opportunity in lieu of deportation. Tr. July 14 at 41:11-14.

Henriquez, by testimony at the hearing, made clear that he had no recollection as to whether he had ever spoken directly with his client. Tr. July 14 at 50:16-25, 51:1-4. Nor did he have any recollection of whether he advised the defendant or his family about the possibility of voluntary departure. Henriquez Aff. In Supp. Of Mot. To Dismiss at ¶¶ 1-2 (Dkt. No. 26) (hereafter "Henriquez Aff."); Tr. July 14 at 70:8-13. Further, his contemporaneous case file does not contain any notes or references to "any conversation concerning voluntary departure with Garcia or anyone else." Henriquez Aff. at ¶ 2.

6

Concerning the strategy he pursued during defendant's 1999 removal hearing, Henriquez acknowledged that he should not have sought adjustment of status and that he had not considered pertinent provisions of IIRIRA in assessing whether a Certificate of Relief from Disabilities would have affected defendant's removability. Tr. July 14 at 58:2-11, 82:22-24. Regarding adjustment of status, Henriquez admitted that he knew that his client would not qualify for this relief unless, at the time of the hearing, he had immediate access to a visa. But Henriquez also knew that the wait for a visa was then at least several years long. Tr. July 14 at 62:7-25, 63:1-6. Henriquez explained that he had nonetheless entertained the hope that a visa might be secured based on a case he had read that suggested to him that his client might be able to circumvent the waiting list. Id. at 82:4-17. As he acknowledged at the hearing, however, his hope was unfounded, as the applicable regulations, which Henriquez had not consulted but superseded all prior caselaw, made clear that in defendant's case the extended waiting period could not be avoided. Id. at 65:15-19, 82:4-17. Without circumvention of the waiting period, the IJ had no jurisdiction over defendant's adjustment of status request because he was required to order defendant removed years before a visa would become available. Id. at 62:7-25, 63:1-11. Asked how he would have proceeded had he researched the regulations before the hearing, Henriquez replied: "I would not have made the claim for adjustment of status because the argument that I was using [was] invalid." Id. at 82:18-24.

Regarding his request for a Certificate of Relief from Disabilities, Henriquez testified that he had relied on caselaw that predated IIRIRA, by then in effect for several years. Tr. July 14 at 58:2-11. Initially, he acknowledged that although IIRIRA's new definition of the term "conviction" could have been significant in determining whether a certificate of relief

would have affected his client's removability, he did not research the issue. Id. at 58:6-24. Subsequently, he explicitly acknowledged that even if the defendant had secured a certificate of relief from disabilities, defendant's conviction would have remained a "conviction" within IIRIRA's definition of that term. Id. at 79:16-20.

Turning to the tactical basis for failing to pursue voluntary departure, Henriquez could not recall why he did not ask the IJ to grant defendant this relief. Tr. July 14 at 70:14-18. But his testimony made clear that Henriquez thought that his client was ineligible. Citing the INA, he testified that a voluntary departure application required a showing of "good moral character" regardless of when the application was made during the hearing. Tr. July 14 at 78:22-25, 81:14-22.[4]

The parties do not dispute that defendant was eligible for voluntary departure, Tr. July 2 at 16:15-20, and that, had defendant sought voluntary departure at any time prior to the conclusion of the hearing, there is a reasonable probability that his application would have been granted. Tr. July 2 at 17:8-16.

## DISCUSSION

Under § 1326(d), an alien charged with illegal reentry under § 1326(a) may challenge the validity of the underlying deportation order upon which the charge is based. See United States v. Lopez, 445 F.3d 90, 94 (2d Cir. 2006). This provision effectively codified the Supreme Court's holding in United States v. Mendoza-Lopez, 481 U.S. 828 (1987), that an

---

[4] As discussed below at page 21, Henriquez was mistaken, as defendant could in fact have sought voluntary departure without showing "good moral character" had the request been made at any time prior to the conclusion of the deportation hearing.

alien has the right collaterally to challenge the validity of a deportation order when the order

is being used to form the element of a criminal offense and the alien has been denied any

possibility of judicial review. Id. at 838-39. In order to challenge the validity of a

deportation order under § 1326(d), the defendant-alien must demonstrate that:

> (1) the alien exhausted any administrative remedies that
> may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued
> improperly deprived the alien of the opportunity for judicial
> review; and
> (3) the entry of the order was fundamentally unfair.

§ 1326(d). The third prong, in turn, requires the demonstration of "both a fundamental

procedural error and prejudice resulting from that error." United States v. Perez, 330 F.3d

97, 104 (2d Cir. 2003) (internal quotations and citation omitted). The defendant-alien must

satisfy all three prongs in order to obtain a dismissal of the indictment against him. United

States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002).

The threshold question is whether deprivation of voluntary departure rights under

§1229c can ever be a fundamental procedural error under the first requirement of § 1326(d)'s

third prong. As noted, the Second Circuit has not yet addressed whether such a deprivation

constitutes a fundamental procedural flaw and therefore may form the basis of a collateral

attack upon the deportation order. If not, Garcia may not avail himself of the § 1326(d)

remedy to avoid criminal prosecution in this case. On the other hand, if the deprivation

constitutes such a fundamental flaw, I must determine whether that flaw resulted in a

deportation order that was "fundamentally unfair," as set forth in the third prong of the

§1326(d) requirements. Because the answer to that question is central to an analysis of

whether defendant was improperly deprived of the opportunity for judicial review of the

order and whether he exhausted any available administrative remedies, the first and second prongs of §1326(d), respectively, I will address the three statutory requirements in reverse order. The analysis starts with the threshold question: can deprivation of voluntary departure rights under § 1229c ever be a fundamental procedural error?

## I. Deprivation of Voluntary Departure Rights May Constitute a Fundamental Procedural Flaw Within the Scope of § 1326(d)

### a. Voluntary Departure Rights Under § 1229c

Voluntary departure is a form of discretionary relief that allows an eligible alien "– either before the conclusion of removal proceedings or after being found deportable – to leave the country willingly." <u>Dada v. Mukasey</u>, 554 U.S. ___, ___, 128 S. Ct. 2307, 2312 (2008). <u>See</u> 8 U.S.C. § 1229c. An alien may be eligible for voluntary departure if he has not been convicted of an aggravated felony or deemed a terrorist. § 1229c(a)(1). In exercising discretion to decide whether to grant voluntary departure, the IJ may consider an alien's personal and criminal history. <u>In re Eloy Arguelles-Campos</u>, 22 I. & N. Dec. 811, 817, 1999 WL 360383 (BIA 1999).

If voluntary departure relief is sought prior to the conclusion of the removal proceeding, the alien must, among other things, make no additional requests for relief and withdraw any such requests that have been made, concede removability, and waive appeal of all issues. 8 C.F.R. § 240.26(b)(1)(i) (now codified at 8 C.F.R. § 1240.26(b)(1)(i)). If the relief is sought after the conclusion of the removal proceeding, the alien must also establish that he "is, and has been, a person of good moral character for at least five years immediately preceding the application." § 1229c(b)(1)(B); 8 C.F.R. § 240.26(c)(1)(ii) (now

10

§1240.26(c)(1)(ii)). See also Arguelles-Campos, 22 I. & N. at 811. An alien seeking voluntary departure prior to a proceeding's conclusion does not need to show "good moral character." § 1229c(a); 8 C.F.R. § 240.26(b)(1)(i) (now 8 C.F.R. § 1240.26(b)(1)(i)); see also Arguelles-Campos, 221 I. & N. at 811. According to 8 U.S.C. § 1101(f)(7), "good moral character" is not present when an alien has been confined, as a result of a conviction, for 180 days or more during the five years preceding the alien's application for voluntary departure.

As previously noted, voluntary departure in lieu of deportation benefits an alien in a number of significant ways. The alien "avoids extended detention pending completion of travel arrangements; is allowed to choose when to depart (subject to certain restraints); and can select the country of destination." Dada, 128 S.Ct. at 2314. "And, of great importance, by departing voluntarily the alien facilitates the possibility of readmission ... [and may] sidestep some of the penalties attendant to deportation," id., including a criminal prosecution for reentry without permission under 8 U.S.C. § 1326.

An IJ is required to inform eligible aliens about the availability of discretionary relief, including voluntary departure; failure to do so is a basis for a remand by the BIA. In re Julio Antonio Cordova, 22 I. & N. Dec. 966, 970-72, 1999 WL 590719 (BIA 1999). Under 8 C.F.R. § 240.11(a)(2) (now 8 C.F.R. § 1240(a)(2)), "[t]he Immigration Judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing." Voluntary departure is one of the "benefits enumerated in this chapter." See 8 C.F.R. §240.26 (now 8 C.F.R. § 1240.26).

**b. Deprivation of Voluntary Departure Rights Can Be a Fundamental Procedural Flaw**

As noted, while the Second Circuit has not yet determined whether deprivation of voluntary departure rights is the type of fundamental procedural error that may trigger the remedy of § 1326(d), it has held that deprivation of the right to apply for discretionary cancellation of removal under former INA § 212(c) "can, if prejudicial, be fundamentally unfair within the meaning of § 1326(d)(3)." United States v. Copeland, 376 F.3d 61, 71 (2d Cir. 2004). In reaching this conclusion, the Copeland court, rejecting the analysis of the majority of circuits that had addressed the issue, adopted the conclusion of the Ninth Circuit that although § 212(c) relief is ultimately discretionary, deprivation of the right to apply for such relief "may be fundamentally unfair." Copeland, 376 F.3d at 71 (citing United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1049 (9th Cir. 2003)). The court explained:

> [C]ritical to our reasoning ... is the distinction between a right to seek relief and the right to that relief itself.... The issue ... is not whether Section 212(c) relief is constitutionally mandated, but whether a denial of an established right to be informed of the possibility of such relief can, if prejudicial, be a fundamental procedural error.

The court concluded: "We believe that it can." Id. at 72

Articulating its reasons for reaching this conclusion, the court first observed that "[d]eportation usually has very serious consequences" and, as such, is a "'drastic measure.'" Copeland, 376 F.3d at 72-73 (quoting Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948)). "[F]or many aliens in cases such as the present one, Section 212(c) is the only available avenue of relief." Id. at 73. The court also cited the Supreme Court's statements in INS v. St. Cyr, 533 U.S. 289 (2001), noting that § 212(c) relief is in fact granted "in a very 'substantial percentage' of cases," id. at 73 (quoting St. Cyr, 533 U.S. at 296), and

12

"recogniz[ing] the importance of being able to seek such relief and that the right to seek such relief, even if discretionary, cannot be lightly revoked." Id. Finally, the court explained that, as discussed earlier in its opinion, "IJ's have special responsibilities toward aliens in deportation proceedings." Id. In this regard, the court reaffirmed that "'[t]he IJ ... unlike an Article III judge, is not merely the fact finder and adjudicator but also has a obligation to establish the record, ... [an obligation] analogous to that of an administrative law judge in [a] social security [hearing].'" Id. at 71 (quoting Yang v. McElroy, 277 F.3d 158, 162, 162 n.3 (2d Cir. 2002)).[5] The court also reaffirmed that "'[w]hen a regulation is promulgated to protect a fundamental right derived from ... a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid ....'" id. at 72 (quoting Waldron v. INS, 17 F.3d 511, 518 (2d Cir. 1994)).

Virtually all the considerations that the Copeland court relied upon in holding that deprivation of the right to apply for § 212(c) relief can be a fundamental error also support the conclusion that deprivation of voluntary departure rights under § 1229c may constitute a fundamental error. Like § 212(c) relief, the granting of voluntary departure is ultimately within the discretion of the IJ; yet the right to seek that relief, also like § 212(c) relief, is directly conferred by a federal statute, §1229c, that is implemented by federal regulations. 8 C.F.R. §§ 240.11(a)(2), 240.26 (now 8 C.F.R. §§1240.11(a)(2), 1240.26). See Copeland, 376 F.3d at 72 ("'When a regulation is promulgated to protect a fundamental right derived

---

[5] Although the court added that the IJ's duty is "especially [heightened] where an alien is unrepresented by counsel,"Copeland, 376 F.3d at 71, the Second Circuit has held in the social security context that an administrative law judge has an obligation to the claimant to develop the record regardless of whether the claimant is represented by counsel. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996).

from ... a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid'" (quoting Waldron, 17 F.3d at 518)). At the time of defendant's hearing, the right to apply for voluntary departure was also implemented by a federal regulation mandating that the IJ inform an alien of his eligibility to apply for voluntary departure, and afford the alien the opportunity to make that application during the hearing. 8 C.F.R. §§240.11(a)(2), 240.26. In this regard, an IJ's duty to ensure that the alien is aware of his voluntary departure rights is not unlike the IJ's obligations with respect to an alien's §212(c) rights. See Copeland, 376 F.3d at 73 ("IJs have special responsibilities toward aliens in deportation proceedings"). Moreover, the Board of Immigration Appeals (hereafter "the BIA") requires a remand when an IJ misinforms or fails to inform an eligible alien about voluntary departure rights, even when the alien is represented by an attorney. Cordova, 22 I. & N. at 966.[6] In short, as with § 212(c) relief, the "right to be informed of the possibility" of voluntary departure relief, although the relief itself is not "constitutionally mandated, . . . [is] an established right." Copeland, 376 F.3d at 72.

Importantly, too, as the Supreme Court in St. Cyr "recognized the importance of being able to seek [§ 212(c)] relief," Copeland, 376 F.3d at 73, so the Supreme Court in Dada, 128 S. Ct. at 2314, acknowledged the "evident" "[b]enefits to the alien from voluntary departure[.] . . . He or she avoids extended detention pending completion of travel arrangements; is allowed to choose when to depart . . .; and can select the country of destination." Further, voluntary departure may facilitate lawful readmission. Id. at 2314-15.

---

[6] The deprivation of voluntary departure rights is no less significant because defendant is making a collateral attack in district court. Perez, 330 F.3d at 103 (the standard of review applied to a deportation order is not higher on collateral attack than it is on direct attack).

Moreover, just as the Supreme Court in St. Cyr noted that § 212(c) relief is granted in "a very 'substantial percentage' of cases," Copeland, 376 F.3d at 73 (quoting St.Cyr, 533 U.S. at 296), so the Court in Dada observed that "[b]etween 1927 to 2005, over 42 million aliens were granted voluntary departure; almost 13 million of those departures occurred between 1996 and 2005 alone." Dada 128 S. Ct. at 2312. Thus, the Supreme Court has recognized that both rights are highly beneficial to an alien and that both are often conferred when sought.

Most significantly, the "very serious consequences" of deportation, Copeland, 376 F.3d at 72, militate in favor of treating voluntary departure rights as "fundamental [in] nature," id. at 73, as they are analogous to § 212(c) rights in this respect. While the government is correct that § 212(c) rights, unlike voluntary departure rights, can result in the alien's remaining in the country, see Govt.'s Rep. to Def.'s Mot. to Dismiss at 10, n.7 (Dkt. No. 21), an alien permitted to voluntarily depart the United States in lieu of being deported is not subject to felony prosecution under §1326 upon a subsequent unauthorized entry into the country. Plainly, the respects in which deportation may prove drastic differ for an alien deprived of § 212(c) rights and an alien deprived of voluntary departure rights. But the potential consequences flowing from the deprivation of those respective rights are comparable in magnitude – especially when, as here, voluntary departure is an alien's only relief from removal. Finding no reasonable basis to distinguish between the deprivation of the two rights, I conclude, under the reasoning of Copeland, that the deprivation of voluntary departure rights may constitute a "fundamental error" in a deportation proceeding, giving rise to a basis to seek collateral review of the deportation order under §1326(d).

This conclusion is consistent with the result reached in several cases in the Ninth Circuit holding that deprivation of voluntary departure rights may constitute a due process violation, permitting a defendant-alien to challenge the validity of a prior deportation order under § 1326(d). The Ninth Circuit reached this conclusion in three unpublished opinions. In United States v. Nungaray-Rubalcaba, 229 Fed. Appx. 436, 439 (9th Cir. 2007), the circuit found that deprivation of notice of possible eligibility for voluntary departure warranted reversal of defendant's conviction under § 1326. See also United States v. Basulto-Pulido, 219 Fed. Appx. 717, 718-19 (9th Cir. 2007) (holding that the district court erred in denying a motion to dismiss a § 1326 indictment where the underlying deportation order resulted from a proceeding in which the alien was deprived of his right to apply for voluntary departure); United States v. Alonza-Mendoza, 239 Fed. Appx. 330, 331-32 (9th Cir. 2007) (finding that defendant's due process rights were violated when the IJ did not inform him about his eligibility for voluntary departure, but concluding that the violation did not prejudice defendant, whose lengthy criminal history would have made a discretionary grant of voluntary departure "not plausible").[7] Similarly, in United States v. Lopez-Menera, 542 F.

---

[7] In United States v. Becerril-Lopez, 528 F.3d 1133, 1138 (9th Cir. 2008), the Ninth Circuit upheld an alien's § 1326 conviction against a challenge based on the pre-IIRIRA voluntary departure provision of the INA, codified at 8 U.S.C. § 1252(b) (1995). Under the then-effective statute, the circuit explained, "pre-hearing voluntary departure would have been granted, if at all, [only] *before* the [deportation] hearing." Becerril-Lopez, 528 F.3d at 1138 (emphasis added). Accordingly, the Ninth Circuit concluded that "we cannot hold that the IJ violated Becerril's rights by failing to mention it at the hearing itself." The deportation proceeding in Becerril-Lopez occurred before the enactment of statutory and regulatory amendments conferring on aliens in deportation proceedings the right to seek voluntary departure without the necessity of proving good moral character, so long as the application was made prior to the proceeding's conclusion. See Arguelles-Campos, 22 I. & N. at 811. Because the IIRIRA amended the provision in 1996 to expand the availability of the right, Arguelles-Campos, 22 I. & N. at 811, and because federal regulations were issued to implement it and to ensure that the IJ communicated the right to aliens in deportation proceedings, 8 C.F.R.

Supp. 2d 1025 (N.D. Cal. 2008), the district court dismissed a § 1326 indictment of a defendant who, although statutorily eligible, was not afforded the opportunity at his deportation hearing to seek voluntary departure.

Finally, in United States v. Brown, 148 F.Supp.2d 191 (E.D.N.Y. 2001), Judge Sifton of this court reached a similar conclusion with regard to an extradited alien who should have been – but was not – given the opportunity to depart the United States voluntarily rather than be deported. Judge Sifton determined that this failure constituted a "procedural defect[] in the [deportation] proceeding [that] 'impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause,'" Brown, 148 F.Supp.2d. at 199 (quoting Rabiu v. INS, 41 F.3d 879, 882 (2d Cir. 1994)), requiring the dismissal of the alien's indictment under § 1326(d).

In sum, having located no authority to the contrary, and relying upon the Second Circuit's analysis in Copeland and the consistent conclusions reached by the above noted courts, I hold that deprivation of voluntary departure rights under § 1229c may be a fundamental procedural flaw in a deportation proceeding that, if the remaining statutory requirements are met, is sufficient to mount a successful collateral attack upon a deportation order under § 1326(d).

---

§§240.11, 240.26 (now 8 C.F.R. §§ 1240.11, 1240.26), Becerril-Lopez is inapposite to the instant case, which is governed, rather, by the amended statute and regulations. It should be noted, however, that although Becerril-Lopez is similarly inapposite to Nungaray-Rubalcaba and Basulto-Pulido, in that the latter cases were decided under the amended statute and regulations, the Becerril-Lopez court, in dicta and in a footnote, referred to those "unpublished memorandum dispositions" as reaching a holding contrary to that of Becerril-Lopez. Becerril-Lopez, 528 F.3d at 1138 n.3.

## II. Ineffective Assistance of Counsel Rendered Defendant's Deportation Proceeding "Fundamentally Unfair" Under § 1326(d)(3)

Having determined that deprivation of voluntary departure rights under § 1229c can be a fundamental procedural flaw in a deportation proceeding, the next question to be addressed is whether, in defendant's case, that flaw rendered his deportation proceeding and order "fundamentally unfair" so as to satisfy the third prong of § 1326(d). Defendant argues that the performance of his counsel in failing to pursue or even advise him of the availability of voluntary departure fell so far below prevailing norms of competence and so prejudiced defendant that "the entry of the [deportation] order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). I agree.

Because deportation proceedings are civil in nature, aliens are not protected by the Sixth Amendment right to counsel. Perez, 330 F.3d at 101 (citing Saleh v. United States Dep't of Justice, 962 F.2d 234, 241 (2d Cir. 1992)). Thus, for an alien-defendant to prevail on a claim of ineffective assistance of counsel, he "'must show that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'" Id. (quoting Saleh, 962 F.2d at 241). "To show fundamental unfairness, an alien must allege facts sufficient to show 1) 'that competent counsel would have acted otherwise,' and 2) 'that he was prejudiced by his counsel's performance.'" Id. at 101-02 (quoting Rabiu v. INS, 41 F.3d 879, 882 (2d Cir. 1994)) (internal quotation omitted).

It is established in this circuit that an immigration attorney's unwarranted failure to seek discretionary waiver of removal under § 212(c), if prejudicial to the alien, renders the entry of a deportation order "fundamentally unfair" in satisfaction of the third prong of

18

§1326(d).  See United States v. Scott, 394 F.3d 111, 117-118 (2d Cir. 2005); Perez, 330 F.3d at 103-04; Rabiu, 41 F.3d at 882-83.  Because, as discussed in detail above, an alien-defendant's voluntary departure rights under § 1229c are analogous to § 212(c) rights in terms of the magnitude of their importance to an alien, the noted authorities, although in the § 212(c) context, apply with equal force to the instant case, where defendant claims that his counsel's unjustified failure to seek voluntary departure under § 1229c resulted in the entry of a "fundamentally unfair" deportation order.  Under those authorities, the record in this case compels the conclusion that the deprivation of defendant's voluntary departure rights was caused by the ineffectiveness of his counsel, rendering his deportation order "fundamentally unfair."

It is undisputed that counsel never requested voluntary departure on behalf of his client; nor did he even advise defendant of the availability of that remedy. Moreover, by explicitly waiving the reading of defendant's rights by the IJ, counsel affirmatively prevented the IJ from discharging his independent obligation, made explicit by regulation, see 8 C.F.R. §§ 240.11, 240.26, to ensure that the alien receive notice of his rights, including the availability of voluntary departure under § 1229c.

Moreover, contrary to the government's argument, there was no legitimate tactical reason for counsel to forego a request for voluntary departure on defendant's behalf.  Indeed, as counsel acknowledged at the evidentiary hearing, the primary avenue of relief he pursued at defendant's 1999 deportation hearing was futile under the then-governing law. Specifically, counsel explained that his request for an adjournment of the hearing to secure an adjustment of status for his client had been made with the hope that the law would permit him to circumvent the several-year waiting list to secure the necessary visa, as counsel knew

that the IJ would not otherwise have jurisdiction to adjudicate the claim. But it was not until after the hearing had concluded that counsel first consulted the controlling regulations, which made clear that his theory at the hearing that the waiting list might be avoided was mistaken. Had he read the governing law in advance of the hearing, counsel admitted, he would not have made the argument at all.[8]

Even if counsel had raised a colorable argument at the deportation hearing, however, there came a time in the hearing when the IJ had clearly rejected all requests counsel had made and had solicited any additional requests for relief. At that juncture, and before the IJ's final order of deportation issued, counsel was free to request voluntary departure if defendant then waived appeal and withdrew the arguments the IJ had already denied. 8 U.S.C. § 1229c;

---

[8] As counsel implicitly acknowledged in his testimony, his second request for relief at the deportation hearing – an adjournment to secure a certificate of relief from disabilities – also lacked merit. In 1996, as part of IIRIRA, Congress adopted a new definition of the term "conviction" for immigration law purposes where a state court had mitigated an alien's formal judgment of conviction of the basis of a state rehabilitation statute, such as § 701 of the New York Corrections Law. Specifically, 8 U.S.C. § 1101(a)(48)(A) defines the term "conviction", "with respect to an alien, [in part, as] a formal judgment of guilt entered by a court ... where ... the alien has entered a plea of guilty ... and ... the judge has ordered some form of punishment." The Congressional intent animating this amendment had been identified by the BIA three months prior to defendant's deportation hearing as effecting the "eliminat[ion of] the need to refer to the vagaries of the states' ameliorative statutes in order to determine if an alien has been convicted." In re Mauro Roldan-Santoyo, 22 I. & N. Dec. 512, 1999 WL 126433 (BIA 1999)(en banc), vacated on other grounds sub. nom. Lujan-Armendariz v. INS, 222 F.3d 738 (9th Cir. 2000). At the immigration hearing, when the IJ relied on this amendment in declining to grant counsel's request for an adjournment, counsel did not elaborate his argument further. His reason for failing to pursue the request became clear in counsel's subsequent hearing testimony: he understood that a Certificate of Relief from Disabilities would not have eliminated defendant's conviction for immigration purposes. Tr. July 2 at 79:16-20. The correctness of counsel's judgment has since been confirmed. See Mugalli v. Ashcroft, 258 F.3d 52,62 (2d Cir. 2001)(holding that "Certificate of Relief from Disabilities issued pursuant to § 701 of the New York Corrections Law ... [did not] immunize[] [defendant-alien] ... from any immigration consequences of his conviction").

8 C.F.R. § 240.26 (discussed above at 10-11). The government does not dispute that defendant was then still eligible for voluntary departure. Tr. July 2 at 8:17-12:2, 16:15-20. Nor does the government dispute that the defendant was prejudiced by counsel's failure to request it; the government has conceded that there was at least a reasonable probability that the IJ would have granted the defendant voluntary departure, had it been sought. Id. at 17:8-16. But notwithstanding the absence of any impediment to securing voluntary departure, counsel did not seek it or even discuss the availability of this relief with his client.

Perhaps most disturbing is the evident reason why counsel did not seek voluntary departure relief on behalf of his client prior to the conclusion of the deportation hearing: he was, and indeed still is, laboring under the mistaken impression that his client was not eligible for the relief. Throughout his testimony at the hearing, counsel repeatedly confirmed his understanding that all requests for voluntary departure relief, regardless of whether they are made before or at the deportation hearing or after its conclusion, require a showing that the alien is of "good moral character." See, e.g., Tr. July 14 at 72:22-73:8, 75:22-76:15, 77:17-24, 78:22-25, 81:14-22. Because defendant had, within the five years preceding the hearing, been convicted of firearms possession and imprisoned for one year, defendant was precluded by statute from establishing "good moral character." See 8 U.S.C. § 1101(f)(7). Because counsel believed that his client's inability to prove "good moral character" barred a voluntary departure application regardless of when that application was made, counsel was dissuaded from seeking the relief. But counsel was wrong on the law.

As detailed above, under the statutes and regulations governing defendant's deportation hearing, all of which had been in place for three years before the hearing, had defendant sought voluntary departure at any time prior to the conclusion of the hearing, there

was no requirement that he prove "good moral character." 8 U.S.C.§ 1229c(a); 8 C.F.R.§ 240.26(b)(1)(i) (now 8 C.F.R. §1240.26(b)(1)(i)); see also Arguelles-Campos, 221 I. & N. Dec. at 811. Defendant was indisputably eligible for that relief and, had counsel properly made the application at any time prior to the conclusion of the hearing, it is not contested that there is a reasonable probability that the IJ, in the exercise of his discretion, would have granted it. See July 2 Tr. at 17:8-16.

To rehabilitate counsel's performance in this regard, the government argues that, at the time of the deportation hearing in June of 1999, counsel could not have been expected to have known that this was the law because it was not until three months later that the BIA decided Cordova, 22 I. & N. Dec. 966, reversing the IJ for denying voluntary departure to an alien who was unable to establish good moral character although he had timely applied for the relief in advance of the conclusion of the hearing. See July 14 Tr. At 94:6-15. The flaw in the government's argument is that is was not Cordova that established the law that there was no need to prove "good moral character" to be eligible for voluntary departure as long as the application was made prior to the conclusion of the hearing. That principle had been unambiguously set forth three years before defendant's hearing in the 1996 enactment of § 1229c(c)(1)(ii) and its implementing regulations, 8 C.F.R. § 240.26 (now 8 C.F.R. § 1240.26)). The fact that the BIA in Cordova restated the law embodied in the statute and regulations does not suggest, much less show, that the law had not been firmly established some three years before.

For these reasons and in view of the dire consequences – most notably, the instant criminal prosecution – resulting from counsel's failure to request defendant's voluntary departure, counsel's lapse "fell below the level of performance expected of competent

counsel." Perez, 330 F.3d at 102. This is especially so where, as here, voluntary departure was the only relief realistically available to defendant. Based on the deficiency in counsel's performance, coupled with the government's concession that it resulted in prejudice to defendant as there existed a "reasonable probability" that defendant "would have obtained relief had he ... been informed of, and sought," voluntary departure, Copeland, 376 F.3d at 73, I conclude that the "entry of the [deportation] order was fundamentally unfair," within the meaning of the third prong of § 1326(d).

### III. Defendant Was Deprived of the Opportunity for Judicial Review Under §1326(d)(2)

To satisfy the second requirement of § 1326(d), defendant must demonstrate that he was denied the opportunity for judicial review of his deportation order. Because defendant had no statutory right to appeal his deportation order directly to federal court, the only avenue of judicial review potentially available to him was by initiation of a habeas proceeding. Copeland, 376 F.3d at 67-68 . But even where habeas review is technically available, "judicial review will be deemed to have been denied if resort to a habeas proceeding was not realistically possible." Id. at 68.

In the instant case, defendant was denied the opportunity for judicial review of his deportation order for two independent reasons. First, the ineffectiveness of his counsel in failing to seek or even advise defendant of the availability of voluntary departure under §1229c deprived him of his right to judicial review. Moreover, the interval between the entry of his final deportation order and his physical deportation was too brief to afford defendant a realistic opportunity for habeas review.

In Perez, 330 F.3d at 97, the Second Circuit held that immigration counsel's ineffectiveness in failing to assert a fundamental right on his client's behalf – there, the right to seek discretionary waiver of removal under § 212(c) – also demonstrated that the alien had been deprived of the opportunity for judicial review, satisfying the requirement of §1326(d)(2). For the reasons already detailed (in parts I and II above), Garcia's counsel was similarly ineffective in defendant's deportation proceeding in failing to pursue Garcia's right to seek voluntary departure under §1229c. Further, Garcia's counsel failed even to advise defendant of his right to seek this relief and, by waiving the advice of rights at the deportation hearing, interfered with the IJ's discharge of his responsibility to enlighten defendant on the issue. Thus, as in Perez, counsel's ineffectiveness itself deprived defendant of the opportunity for judicial review, satisfying the second prong of § 1326(d).

As noted, the Second Circuit has also held that judicial review by habeas "will be deemed to have been denied ... if resort to a habeas proceeding was not realistically possible." Copeland, 376 F.3d at 68. The court specified that the opportunity for judicial review will be deemed to have been denied "where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition." Id. Here, only two months elapsed between the date that defendant's deportation order became final, on or about June 30, 1999, and the date of his physical deportation, on September 1, 1999. This period is comparable to those held too brief for resort to habeas to be "realistically possible." See, e.g., United States v. Calderon, 391 F.3d 370, 372-73, 376 (2d Cir. 2004) (holding unrealistic any expectation that defendant could have filed a habeas petition in the 42 days between the entry of removal order and his physical removal); Sosa, 387 F.3d at 138 ("Sosa did not have a realistic possibility of seeking

24

judicial review though a habeas petition[] [i]n the less than one month period after entry of his final deportation order and his deportation."); United States v. Castro, 472 F.Supp.2d 321, 329-31 (E.D.N.Y. 2007) (three month time period insufficient); United States v. Najera-Trejo, 2006 WL 2191349 at * 5-6 (E.D.N.Y. 2006) (same). Because judicial review by habeas was thus not realistically possible, defendant was denied the opportunity for judicial review, also satisfying the second prong of § 1326(d).

## IV. Defendant Is Excused from Exhaustion of Administrative Remedies Under §1326(d)(1)

Finally, a successful collateral attack upon a deportation order under § 1326(d) requires a defendant-alien to establish exhaustion of administrative remedies. § 1326(d)(1). This generally entails appealing the IJ's order of removal to the BIA. In some circumstances, it has also been deemed satisfied by moving to reopen the case before the IJ and appealing a denial of that motion to the BIA. See Copeland, 376 F.3d at 367; Perez, 330 F.3d at 101. Here, defendant waived appeal of his deportation order and did not subsequently move to reopen his case.

Although this statutory exhaustion requirement is strictly construed, see Sosa, 387 F.3d at 136 (citing United States v. Gonzalez-Roque, 301 F.3d 39, 47 (2d Cir. 2002) (emphasizing mandatory nature of statutory exhaustion requirements)), and Theodoropoulos v. INS, 358 F.3d 162, 172 (2d Cir. 2004) (futility excuses exhaustion only where administrative procedures cannot provide relief)), the Second Circuit in Sosa, 387 F.3d at 136-37, held that "the [administrative] exhaustion requirement [of Section 1326(d)(1)] must be excused where an alien's failure to exhaust results from an invalid waiver of the right to

an administrative appeal." Id. at 136. "A failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1) . . . only where an alien's waiver of administrative review was knowing and intelligent." Id. at 137. In Sosa, the court held the exhaustion requirement excused "because Sosa's waiver of his right to an administrative appeal was not knowing and intelligent," as he "was not informed of his right to apply for Section 212(c) relief." Id. See also Calderon, 391 F.3d at 375 (in view of district court's finding "that Calderon's waiver was not knowing and intelligent . . ., we conclude that the failure to exhaust administrative remedies therefore does not bar collateral review of the deportation proceeding.").

Sosa and Calderon control the result here. Because Garcia was not informed of his right to apply for voluntary departure under § 1229c, his waiver of his right to an administrative appeal was, like that of Sosa and Calderon, not knowing and intelligent. Absent a valid waiver of his administrative appeal, Garcia's failure to exhaust administrative remedies is excused, and the first prong of § 1326(d) is satisfied, permitting collateral attack on his deportation order.

## CONCLUSION

For the foregoing reasons, I conclude that the defendant has sustained his burden of establishing each of the three prongs of 8 U.S.C. § 1326(d) required for a successful collateral attack upon his 1999 deportation order. Accordingly, I direct that the indictment be dismissed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

s/ ARR
_____

Allyne R. Ross
United States District Judge

Dated: August 15, 2008
       Brooklyn, New York

**SERVICE LIST**

**Attorney for the United States**

**Matthew S. Amatruda**
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

**Attorneys for Defendant**

**Raymond J. Aab**
120 Broadway
29th Floor
New York, NY 10271

**Alberto A. Ebanks**
Ebanks & Sattler, LLP
20 Vesey Street, Suite 503
New York, NY 10007